UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLEN BELL a/k/a ALLEN WALKER,<br><br>       Plaintiff,<br><br>   v.<br><br>CITY OF NEW YORK, individually and in their official capacity as New York City police officers JACLYN RODNEY, HELIN MARTE and JOHN or JANE DOE 1-10,<br><br>       Defendants. | Case No.: 19-cv-5868 (NRB) |

## MEMORANDUM OF LAW IN OPPOSITON TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT ............................................................................................................. 6

    A.    DEFENDANTS LACKED PROBABLE CAUSE TO ARREST OR
           PROSECUTE ................................................................................................ 6

    B.    PLAINTIFF'S CLAIMS FOR MALICIOUS PROSECUTION SHOULD NOT
           BE DISMISSED SINCE: (i) THERE WAS A LACK OF PROBABLE CAUSE;
           (ii) DEFENDANTS ACTED WITH MALICE; AND (iii) THERE WAS A
           FAVORABLE TERMINATION IN PLAINTIFF'S FAVOR ................................... 11

    C.    PLAINTIFF HAS A VALID FAILURE TO INTERVENE CLAIMS SINCE
           THERE WAS A LACK OF PROBABLE CAUSE TO ARREST PLAINTIFF ......... 16

    D.    MALICIOUS ABUSE OF PROCESS CLAIMS SHOULD NOT BE
           DISMISSED ................................................................................................ 18

    E.    INDIVIDUAL OFFICERS ARE NOT ENTITLED TO QUALIFIED
           IMMUNITY ................................................................................................. 19

    F.    STATE AND FEDERAL ASSAULT AND BATTERY CLAIMS SHOULD
           NOT BE DISMISSED ................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**                                                                **Pages**

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir.2004) ..............................18

*Anderson v. Branen*, 17 F.3d 552 (2d Cir.1994)....................................................................16

*Arteaga v State*, 72 NY2d 212 (1988) ....................................................................................20

*Board of Educ. of Farmingdale v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, (1975)..................................................................................................................................17

*Board of Educ. of Farmingdale*, 38 N.Y.2d at 404 (1975)......................................................18

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003) ..........................................................6

*Brown v. Town of Henrietta*, 118 Misc.2d 133 (Sup.Ct. Monroe Co. 1983)........................15

*Budgar v. State*, 98 Misc.2d 588 (Ct. Cl. 1979)....................................................................23

*Caldarola v. Calabrese*, 298 F.3d 156 (2d Cir. 2002)............................................................6

*City of Canton v. Harris*, 489 U.S. 378 (1989)......................................................................19

*Coleman v. City of New York*, No. 07 Civ. 1051, 2010 WL 571986 (S.D.N.Y. Feb. 2, 2010) .....16

*Colon v City of New York*, 60 NY2d 78 (1983) ..............................................................12, 13

*Curiano v. Suozzi*, 63 N.Y.2d 113 (1984)..............................................................................17

*Detone v Bullit Courier Serv.*, 140 AD2d 278 (1st Dept 1988)............................................19

*Dufort v. City of N.Y.*, 874 F.3d 338 (2d Cir. 2017) .....................................................6, 7

*Ellman v. McCarty*, 70 A.D.2d 150 (2d Dept. 1979)........................................................7,12

*Florida v. Royer*, 460 U.S. 491 (1983) ..................................................................................7

*Ford v Gildin*, 200 AD2d 224 (1st Dept 1994)....................................................................19

*Gantt v. County of Nassau*, 234 A.D.2d 338 (2d Dept. 1996)........................................23

*Gilles v. Repicky*, 511 F.3d 239 (2d Cir. 2007).....................................................................7

*Gisondi v. Town of Harrison*, 72 N.Y.2d 280 (1988) ..........................................................13

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ..................................................6

*Graham v. City of New York*, 28 A.D.2d 245 (1st Dept. 1967) ............................................12

*Guntlow v. Barbera*, 76 A.D.3d 760 (3d Dept. 2010) ..........................................................21

*Haddock v City of New York*, 75 NY2d 478 (1990) ............................................................19

*Hartline v. Gallo*, 546 F.3d 95 (2d Cir.2008) ......................................................................19

*Higgins v. Hamilton*, 18 A.D.3d 436 (2nd Dept. 2005).................................................23

*Holland v. City of Poughkeepsie*, 90 A.D.3d 841 (2d Dept. 2011) ...............................23

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ...............................................20

*Jennings v. Shuman*, 567 F.2d 1213 (3d Cir. 1977).......................................................17

*Johnson v. Suffolk County Police Dept.*, 245 A.D.2d 340 (2d Dept. 1997)....................23

*Kirchner v County of Niagara*, 107 AD3d 1620 (4th Dept 2013) ..................................20

*Loeb v. Teitelbaum*, 77 A.D.2d 92 (2d Dep't 1980).......................................................14

*Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir.2012) ...........................................20

*Lundgren v. Margini*, 30 A.D.3d 476, 477 (2d Dept. 2006) ..........................................12

*MacDonald v. Town of Greenburgh*, 112 AD3d 586 (2d Dept 2013) ...........................22

*Manganiello v City of New York*, 612 F.3d 149 (2d Cir 2010).......................................22

*Martin v. City of Albany*, 42 N.Y.2d 13 (1977) ............................................................12

*Martinez v. City of Schenectady*, 97 N.Y.2d 78 (2001) .................................................14

*Maxwell v. City of New York*, 156 AD2d 28 (1st Dept 1990)..........................................13

*Mendez v. City of New York*, 137 A.D.3d 468 (1st Dept. 2016) .....................................12

*Mills v. Fenger*, 216 Fed.Appx. 7 (2d Cir. 2006) .........................................................20

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) .................18, 19

*Mormon v. Baran*, 35 N.Y.S.2d 906 (Sup.Ct. 1942) .....................................................18

*Munoz v. City of New York*, 18 N.Y.2d 6 (1966) ...........................................................12

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) ..............................................................14

*Nardelli v. Stamberg*, 44 N.Y.2d 500 (1978)................................................................12

*O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996).....................................................12

*Panetta v. Crowley*, 460 F.3d 388 (2d Cir. 2006)............................................................6

*People v. Clayton*, 57 A.D.3d 557 (2d Dept. 2008)........................................................20

*People v. Duffy*, 66 A.D.3d 588 (1st Dept. 2009) ..........................................................20

*People v. Gonzalez*, 57 A.D.3d 1220 (3d Dept. 2008)....................................................20

*People v. Hall*, 10 N.Y.3d 303 (2008) ..........................................................................20

*Ramos v. City of New York*, 285 A.D.2d 284 (1st Dept. 2001) .......................................12

*Reit v. Meyer*, 160 A.D. 752, 146 N.Y.S. 75 (1st Dep't 1914) ........................................................14

*Rubio v. County of Suffolk*, 01-CV-1806 (TCP), 2007 WL 2993830 (E.D.N.Y. Oct. 9, 2007) ....23

*Russell v. Smith*, 68 F.3d 33 (2d Cir. 1995) ..............................................................................11, 12

*Sankar v City of New York*, 867 F.Supp.2d 297 (EDNY 2012) ....................................................22

*Smart v City of New York*, 08CV2203HB, 2009 WL 862281 (SDNY Apr. 1, 2009) ...................13

*Smith-Hunter v. Harvey*, 95 N.Y.2d 191 (2000) ..........................................................................14

*Sulkowska v. City of New York*, 129 F.Supp 2d 274 (S.D.N.Y. 2001) .........................................23

*Torraco v. Port Auth.*, 615 F.3d 129 (2d Cir.2010) .....................................................................18

*United States v. Sokolow*, 490 U.S. 1 (1989) ................................................................................6

*Vitellaro v. Eagle Insurance Co.*, 150 A.D.2d 770 (2d Dep't 1989) .............................................15

*White v. Frank*, 855 F.2d 956 (2nd Cir. 1988) ..............................................................................17

*Wyllie v. Dist. Atty. of County of Kings*, 2 A.D.3d 714 (2d Dept. 2003) .....................................23

*Zgraggen v. Wilsey*, 200 A.D.2d 818 (3d Dept. 1994) .................................................................23

## PRELIMINARY STATEMENT

1.      Plaintiff's counsel, Sim & DePaola, LLP, hereby submits this memorandum of law in opposition to the motion for summary judgment filed by the Defendants in this case.

2.      By way of background, the instant action is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. § 1988 for the violations of his civil rights protected by the Fourth and Fourteenth Amendments, in addition to violations of his rights under the laws of the State of New York.

3.      These claims arise from a February 10, 2018 and February 23, 2018 incidents, in which defendants, acting under color of state law, unlawfully arrested and detained Mr. Allen Bell on both dates. Mr. Bell was subsequently maliciously prosecuted and the matter involving Mr. Bell's arrest on February 10, 2018 was dismissed under 30.30. The arrest on February 23, 2018 was dismissed via a motion to dismiss filed by the district attorney.  As a result, all criminal charges against Mr. Bell were dismissed, representing a favorable termination of the criminal proceedings.

4.      The Plaintiff contends that defendants are liable for his wrongful arrest, detention and subsequent malicious prosecution based on both the factual and legal circumstances surrounding his arrest and prosecution.

5.      The facts of the case demonstrate that the Defendants did not have probable cause to arrest, detain and prosecute the Plaintiff.  Both arrests occurred while Mr. Bell, as an invited guest, was waiting for his friend, who resides at the subject building.  It is submitted that the Defendants lacked probable cause to arrest, detain and prosecute the Plaintiff.  At the very least, there are triable issues of fact that precludes summary judgment as a matter of law.

## STATEMENT OF FACTS

6.      This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §1983 and 42

U.S. § 1988 for the violations of his civil rights protected by the Fourth and Fourteenth

Amendments, in addition to violations of his rights under the Laws of the State of New York.

7.      The Plaintiff contends that defendants are liable for his wrongful arrest and detainment

and subsequent malicious prosecutions based on both the factual and legal circumstances

surrounding his arrest and prosecution.

8.      On February 10, 2018, the Plaintiff went to the building located at 1760 Lexington

Avenue to see his friend, Nirma. Sim Declaration Exhibit A 43:24 to 44:4 Nirma asked the

Plaintiff to come over to her place. Sim Declaration Exhibit A 44:7-8

9.      When he arrived at the building, the Plaintiff telephoned Nirma and told her that he

arrived at her building. Sim Declaration Exhibit A 46:14-17 Nirma Amador provided in her

affidavit that they were supposed to meet at the lobby at 5:00 p.m. that day but she needed to get

her children and family members situated before she could go downstairs to meet the Plaintiff.

Sim Declaration Exhibit B. However, Nirma Amador, a resident of the building states

unequivocally that Mr. Bell was an invited guest at the time of the arrest.  Sim Declaration

Exhibit B.

10.     On February 10, 2018, the Plaintiff walked through the unlocked doors to the lobby of

the building.  Sim Declaration Exhibit A 47:6-8 The Plaintiff waited in the lobby by the

mailboxes for Nirma to come down. Sim Declaration Exhibit A 47:15-17, 48:10-12 The Plaintiff

waited in the lobby as opposed to going upstairs to the apartment because Nirma's children were

in the apartment and he wanted to give Nirma time to take care of her young children first. Sim

Declaration Exhibit A 47:18-20 Mr, Bell waited in the lobby because it was cold outside. Sim

Declaration Exhibit A 48:6-9 Normally, Mr. Bell would wait up to twenty minutes for Nirma to

come down because she is busy with her young children. Sim Declaration Exhibit A 50:10-16.

11.     While waiting in the lobby for five to ten minutes, police officers approached him. Sim

Declaration Exhibit A 49:12-15 When the officers approached the Plaintiff, there was no one

else in the lobby. Sim Declaration Exhibit A 51:20-22

12.     When the officers approached Plaintiff, they asked if the Plaintiff lived in the building

and what he was doing in the building.  In response, the Plaintiff told the officers that he did not

live in the building but he was waiting for someone that lives in the building, Sim Declaration

Exhibit A 51:23 to 52:2 The officers then asked the Plaintiff for his identification. Sim

Declaration Exhibit A 52:14-17 Officer Rodney provided that a person is deemed trespassing if

that person did not live in the building and that person is "not visiting somebody." Defendants

Exhibit D Rodney Deposition 30:17 to 31:4

13.     Further, Officer Rodney provided that if a person was standing in a NYCHA building

lobby, she would need more information to stop that individual. Defendants Exhibit D Rodney

Deposition 34:18-25 If the person refuses to answer her questions, Officer Rodney testified that

she can direct them to leave the lobby. Defendants Exhibit D Rodney Deposition 35:9-16 Officer

Rodney also provided that if a person was just standing in the lobby, refuses to answer any

questions and refuses to leave the lobby, there is nothing she can do if they are not committing

any sort of illegal activity. Defendants Exhibit D Rodney Deposition 40:2-8 Officer Rodney

provided that loitering is congregating with an intent to commit some sort of crime such as

gambling. Defendants Exhibit D Rodney Deposition 42:10-19

14.     To be clear, the Police officers did not witness the Plaintiff committing any crimes.  The

officers then ran the Plaintiff's name and they kept asking the Plaintiff why are you loitering.

The Plaintiff responded that he is not loitering but waiting for his friend, a resident of the building to come down. Sim Declaration Exhibit A 52:18-23 The officers then arrested Plaintiff without asking him for the name or apartment number of the person he is waiting for. Sim Declaration Exhibit A 52:20 to 53:8 When he tried to explain that he was waiting for someone to come downstairs, the officers did not listen and simply arrested him. Sim Declaration Exhibit A 53:12-21 The conversation only lasted a minute or two minutes before they arrested the Plaintiff. Sim Declaration Exhibit A 53:25 to 54:6

15.     The police officers did not give Mr. Bell an option of leaving the building before arresting him. Sim Declaration Exhibit A 54:19 to 55:1 While being arrested, the Plaintiff asked if he could have a minute because his friend is on her way down.  The officers said no and handcuffed him. Sim Declaration Exhibit A 55:5-10

16.     When asked why he didn't ask the officers if he could call Nirman, Mr. Bell responded "they wasn't trying to hear none of that. It was pretty number just locking me up." Sim Declaration Exhibit A 55:13-14

17.     Between February 10 to February 23, 2018, he visited Nirma at her building three times a week without being arrested.  Each time, he waited for Nirma to come downstairs in the lobby.

18.     When he arrived at the building on February 23, he telephoned Nirma to tell her that he arrived at the building. Sim Declaration Exhibit A 70:24 to 71:1

19.     The door to the building was unlocked when Plaintiff arrived at the building on February 23, 2018. Sim Declaration Exhibit A 71:2-10

20.     When he arrived in the lobby on February 23, 2018, he saw his friends, Mark, Jesse and Jason by the mailboxes. Sim Declaration Exhibit A 72:4-6 Mark, Jesse and Jason were just standing and talking with each other. Sim Declaration Exhibit A 76:1-2 They were not rolling

dice. 76:5-6 In fact, no one was rolling dice in the lobby of the building. Sim Declaration Exhibit A 76:7-9 He spoke to friends briefly. Sim Declaration Exhibit A 76:10-20 The Plaintiff made small talk with his friends and told them that he was waiting for his lady friend to come down. Sim Declaration Exhibit A 78:2-4 The discussion did not last long before the police came into the lobby. Sim Declaration Exhibit A 78:5-8

21.     It is unrefuted that Officer Rodney did not witness the Plaintiff gambling. Defendants Exhibit D Rodney Deposition 45:2-8 Officer Rodney was not with Captain Yakatally who believed that people in the lobby maybe gambling but he wasn't sure. Defendants Exhibit D Rodney Deposition 51:6-12 However, the criminal court complaint states that Officer Rodney observed the Plaintiff gambling. Defendants Exhibit D Rodney Deposition 52:11 to 53:7 However, Officer Rodney admitted that the information contained in the criminal court complaint was false. Defendants Exhibit D Rodney Deposition 55:8-25 Officer Rodney testified that the criminal court complaint was wrong because she did not observe anyone throwing dice or gambling. Defendants Exhibit D Rodney Deposition 58:5-15 Further, Officer Rudney does not recall if she told the ADA that she observed the gambling. Defendants Exhibit D Rudney Deposition 91:18-24

22.     Nirma came down to the lobby after he was taken away by the police. Sim Declaration Exhibit A 79:4-6

23.     On February 23, 2018, two plain clothed police officers approached him and had him put his hands up.  The police officers placed him up against the mailboxes when more police arrived in the lobby. The two female officers that arrested the Plaintiff on February 10 arrived.  They came over and said "oh, you again."  They handcuffed him immediately and placed him in the car. Sim Declaration Exhibit A 79:10-18

24.     The officers took their IDs and their wallets out of their pockets. Sim Declaration Exhibit A 81:21-22 The same female officers that arrested him before took the wallet out of his pocket. Sim Declaration Exhibit A 81:23 to 82:1

25.     The officers never asked him if he lived in the building.  They simply said "oh, you again."  Again, he told them that he was waiting for a lady friend to come downstairs. Sim Declaration Exhibit A 82:11-15 The officers did not ask for the name of his friend or the apartment number. Sim Declaration Exhibit A 82:16-19

26.     The officers did not give him an opportunity to call his friend because "they just wanted arrests.". Sim Declaration Exhibit A 83:17-23

## ARGUMENT

### A.     DEFENDANTS LACKED PROBABLE CAUSE TO ARREST OR PROSECUTE

27.     The Defendants incorrectly asserts that Plaintiff's false arrest and false imprisonment claims should be dismissed because there was probable cause to seize Plaintiff.  We disagree.

28.     The presence of probable cause to arrest manifests "when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in belief that an offense has been committed by the person to be arrested." *Boyd v. City of New York,* 336 F.3d 72, 75-76 (2d Cir. 2003) (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991). A determination as to the presence of probable cause to arrest "must consider those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting with supplied emphasis *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002). "It is well settled that probable cause requires more than suspicions, even reasonable ones." *Dufort v. City of N.Y.*, 874 F.3d 338, 350 (2d Cir. 2017) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989). "Police officers may not

seek to verify or dispel their reasonable suspicions of crime 'by means that approach the conditions of arrest.'" *Gilles v. Repicky*, 511 F.3d 239, 246 (2d Cir. 2007) (quoting *Florida v. Royer*, 460 U.S. 491 (1983).

29.     The presence or absence of "[p]robable cause is a mixed question of law and fact. Questions of historical fact regarding the officers' knowledge at the time of arrest are to be resolved by the jury." *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017).

30.     As discussed above, there are major disputes, inconsistencies, and ambiguities here as to the facts leading up to Plaintiffs' arrest.  Plaintiffs are entitled to have a jury resolve the numerous factual inconsistencies, and have a jury determine whether the police had sufficient cause to arrest and prosecute Plaintiffs, whether the police acted reasonably under the circumstances, and whether the police fabricated evidence and made false statements in the accusatory instrument.

31.     In this case, Defendants attempt to establish their prima facie right to summary judgment by completely ignoring the testimony of the Plaintiff.  The Plaintiff's version of the events that led to his arrest demonstrate that the Defendants completely lacked probable cause to arrest the Plaintiff on both February 10 and February 23.

32.     Plaintiff was in the lobby of the building waiting for his friend to come downstairs after she settled her children.  Since his friend was always busy with her children before meeting him, the Plaintiff testified that he would wait up to 20 minutes for her.  It is clear based on the Affidavit submitted as Sim Declaration Exhibit B that Mr. Bell was an invited guest of a resident and thus, he had a right to wait for her in the lobby.

33.     When the officers approached Plaintiff, they asked if the Plaintiff lived in the building and what he was doing in the building.  In response, the Plaintiff told the officers that he did not

live in the building but he was waiting for his friend that does live in the building, Sim

Declaration Exhibit A 51:23 to 52:2   As confirmed by Officer Rodney's testimony, an invited

guest cannot be deemed to be trespassing. Defendants Exhibit D Rodney Deposition 30:17 to

31:4

34.     Clearly, in this case, the Plaintiff was visiting his friend who resides in the building and

thus, the Plaintiff was not trespassing or loitering.

35.     Interestingly, Officer Rodney testified that if a person was standing in a NYCHA

building lobby, she would need more information to stop that individual. Defendants Exhibit D

Rodney Deposition 34:18-25 In this case, Mr. Bell was standing in the lobby.  The Defendants

did not have more information and thus, according to Officer Rodney, Mr. Bell should not have

been stopped.

36.     Further, Officer Rodney provided that if the person refuses to answer her questions, she

could direct that person to leave the lobby. Defendants Exhibit D Rodney Deposition 35:9-16

Officer Rodney also provided that if a person was just standing in the lobby, refuses to answer

any questions and refuses to leave the lobby, there is nothing she can do if they are not

committing any sort of illegal activity. Defendants Exhibit D Rodney Deposition 40:2-8

37.     In this case, Mr. Bell was standing in the lobby waiting for his friend.  According to the

Plaintiff, the Defendants arrested him without asking him to telephone his friend or to leave the

lobby.  Rather, the Plaintiff testified that the Defendants just arrested him after asking for his

identification.   To be clear, Mr. Bell was not engaged in any illegal activity.  Again, Mr. Bell

was just standing in the lobby waiting for his friend.  When asked what Mr. Bell was doing, he

answered that he does not reside in the building but that he was waiting for a friend to come

downstairs.  The Defendants did not ask him for the name of his friend or the apartment number

that she lives in.  Rather, the Defendants wrongfully arrested the Plaintiff.  The Defendants attempt to twist the facts by stating that the Plaintiff never gave a name or apartment number.  However, they ignore the fact that they never asked the question.  In fact, nothing submitted by the Defendants demonstrate that they even asked this question.  Nevertheless, the Plaintiff stated that he was waiting for his friend to come downstairs, which demonstrated that he was permitted to be in the lobby. Sim Declaration Exhibit A 52:18-23 As such, based on Officer Rodney's testimony, since Mr. Bell was not engaged in illegal activity, he should not have been arrested or detained.

38.     To be clear, when the officers told the Plaintiff that he can't be loitering in the building, the Plaintiff responded that he does not understand how he can be loitering if he is waiting for someone that lives in the building. Sim Declaration Exhibit A 54:15-18 The officers did not give him an option of leaving the building. Sim Declaration Exhibit A 54:19 to 55:1 As they were arresting the Plaintiff, the Plaintiff asked if he could have a minute because his friend is on her way down.  The officers said no and handcuffed him and placed him in the car. Sim Declaration Exhibit A 55:5-10

39.     When asked why he didn't ask the officers if he could call Nirman, Mr. Bell responded "they wasn't trying to hear none of that. It was pretty number just locking me up." Sim Declaration Exhibit A 55:13-14

40.     As such, the Defendants did not have probable cause to arrest the Plaintiff on February 10.

41.     With respect to the February 23 arrest, the Defendants assert that the Defendants approached the Plaintiff and three of his friends due to suspicion of gambling.  However, the Defendants have failed to demonstrate that anyone witnessed the Plaintiff gambling.  In fact, all

of the evidence demonstrates that Mr. Bell was merely standing in the lobby waiting for his friend to come downstairs as he engaged in small talk with friends he saw in the lobby. The Defendants assert that they vouchered dice as part of this arrest but failed to identify who had the dice in the first place. The Defendants also failed to demonstrate that the Plaintiff was engaged in gambling itself, with money at stake. No one witnessed the Plaintiff gambling.

42.    On February 23, when the Plaintiff arrived in the lobby, he saw his friends, Mark, Jesse and Jason by the mailboxes. Sim Declaration Exhibit A 72:4-6 When he entered the lobby, Mark, Jesse and Jason were just standing and talking with each other. Sim Declaration Exhibit A 76:1-2 They were not rolling dice. Sim Declaration Exhibit A 76:5-6 No one was rolling dice in the lobby of the building. Sim Declaration Exhibit A 76:7-9 He spoke to friends briefly when he entered the lobby. Sim Declaration Exhibit A 76:10-20 The Plaintiff made small talk with his friends and told them that he was waiting for his lady friend to come down. Sim Declaration Exhibit A 78:2-4 The discussion did not last long before the police came into the lobby. Sim Declaration Exhibit A 78:5-8

43.    Officer Rodney did not witness the Plaintiff gambling. Defendants Exhibit D Rodney Deposition 45:2-8 In fact, no one saw the Plaintiff or his three friends gambling. Defendants Exhibit D Rodney Deposition 51:6-12 However, the criminal court complaint states that Officer Rodney observed the Plaintiff loitering while he was seen gambling. Defendants Exhibit D Rodney Deposition 52:11 to 53:7 However, Officer Rodney admitted that the information contained in the criminal court complaint is incorrect. Defendants Exhibit D Rodney Deposition 55:8-25 Officer Rodney testified that the criminal court complaint was wrong because she did not observe anyone throwing dice. Defendants Exhibit D Rodney Deposition 58:5-15 Further,

Officer Rudney does not recall if she told the ADA that she observed the gambling. Defendants Exhibit D Rudney Deposition 91:18-24

44.     Similar to the prior incident, Nirma came down to the lobby after he was taken away by the police. Sim Declaration Exhibit A 79:4-6

45.     On February 23, 2018, two plain clothed police officers approached him and had him put his hands up.  The police officers placed him up against the mailboxes when more police arrived in the lobby. The two female officers that arrested the Plaintiff on February 10 arrived.  They came over and said "oh, you again."  They handcuffed him and placed him in the car. Sim Declaration Exhibit A 79:10-18

46.     The officers did not give him an opportunity to call his friend because "they just wanted arrests.". Sim Declaration Exhibit A 83:17-23

47.     Again, the February 23 arrest lacked probable cause since Mr. Bell was an invited guest at the building. Further, in order to establish probable cause, the criminal court complaint fabricated an essential fact by stating that Officer Rodney witnessed the Plaintiff gambling.  This of course was a fabricated observation.

48.     Therefore, it is submitted that the Defendants lacked probable cause to arrest and detain Mr. Bell.  At the very least, this is a triable issue of fact since the Plaintiff provided sufficient testimony that disproves

**B.     PLAINTIFF'S CLAIMS FOR MALICIOUS PROSECUTION SHOULD NOT BE DISMISSED SINCE: (i) THERE WAS A LACK OF PROBABLE CAUSE; (ii) DEFENDANTS ACTED WITH MALICE; AND (iii) THERE WAS A FAVORABLE TERMINATION IN PLAINTIFF'S FAVOR**

49.     When analyzing a § 1983 claim, courts look to the common law to determine whether conduct is tortious. *See Russell v. Smith,* 68 F.3d 33, 36 (2d Cir. 1995) (state law governs § 1983 malicious prosecution claim). In order to prove a claim for malicious prosecution under New

York law, a plaintiff must establish that: (1) an action was initiated by the defendant against the plaintiff; (2) the defendant acted with malice; (3) there was no probable cause for commencing the action; and (4) the action terminated in favor of the plaintiff. *See O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir. 1996); *Russell,* 68 F.3d at 36; *Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1249-50 (1983).

50.     In the context of a malicious prosecution cause of action, probable cause "consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *See Ramos v. City of New York,* 285 A.D.2d 284, 299 (1st Dept. 2001). Generally, the issue of whether probable cause existed is to be determined by a jury.

51.     When "there is a dispute about either the true state of facts, or the inferences to be drawn by a reasonable person from the facts which led to the prosecution, the uniform rule has been to require there be a factual resolution at a trial." *Munoz v. City of New York,* 18 N.Y.2d 6, 11 (1966); *Graham v. City of New York,* 28 A.D.2d 245, 247 (1st Dept. 1967).

52.     Furthermore, a jury may infer that a defendant acted with actual malice if it finds that the defendant arrested plaintiff without probable cause. *Martin v. City of Albany,* 42 N.Y.2d 13, 17 (1977); *Mendez v. City of New York,* 137 A.D.3d 468, 470 (1st Dept. 2016); *Lundgren v. Margini*, 30 A.D.3d 476, 477 (2d Dept. 2006); *Ellman v. McCarty*, 70 A.D.2d 150, 156 (2d Dept. 1979). Indeed, "a finding that there was no probable cause for the plaintiff's arrest could support an inference of actual malice." *Lundgren v. Margini*, 30 A.D.3d 476, 477 (2d Dept. 2006); *Mendez v. City of New York,* 137 A.D.3d 468, 470 (1st Dept. 2016).  Furthermore, "whether malice is to be inferred from evidence showing lack of probable cause is a question of fact for a jury." *Ellman v. McCarty,* 70 A.D.2d 150, 156 (2d Dept. 1979); *see also Nardelli v. Stamberg*, 44 N.Y.2d 500, 502 (1978); *Martin v. City of Albany*, 42 N.Y.2d 13, 18 (1977).

53.     The core allegations underlying Plaintiff's claim are that the Individual Defendants commenced a prosecution against Allen Bell by fraud, fabrication of evidence, perjury and police investigation undertaken in bad faith.  Thus, there was no probable cause for the arrest and there was a favorable termination for the proceedings.

54.     Furthermore, the evidence, viewed in the light most favorable to plaintiffs, shows that the criminal proceedings initiated against plaintiffs were based on fabricated evidence and bad faith conduct by the police officers involved in plaintiffs' arrests.

55.     It is well settled that "the presumption of regularity ordinarily attendant upon an accused's arraignment is rebutted 'by proof the court orders were the result of fraud, perjury or the suppression of evidence by the police." *Maxwell v. City of New York,* 156 AD2d 28, 34 (1st Dept 1990) *quoting Gisondi v. Town of Harrison*, 72 N.Y.2d 280 (1988).  Indeed, where there is evidence that "the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith the presumption of probable cause has been overcome, and it can no longer be held as a matter of law that defendant prosecuted plaintiff with probable cause and without malice."  *Maxwell v. City of New York,* 156 AD2d 28, 34 (1st Dept 1990); *Colon v City of New York*, 60 NY2d 78, 83 (1983).

56.     Furthermore, "the protection afforded to law enforcement agents by probable cause is not available when the agents have knowingly made false statements to the prosecutor."  *Smart v City of New York,* 08CV2203HB, 2009 WL 862281 (SDNY Apr. 1, 2009).

57.     Here in this case, there is ample evidence that the police acted in bad faith, fabricated evidence, and failed to give a complete statement of facts to the District Attorney's Office as

evidence by Officer Rodney's admissions that the accusatory instrument contained false information.

58.     To recover for malicious prosecution, it is the general rule that a plaintiff "must establish that a criminal proceeding was commenced, that it was terminated in favor of the accused, that it lacked probable cause, and that the proceeding was brought out of actual malice." *Martinez v. City of Schenectady,* 97 N.Y.2d 78, 84, 735 N.Y.S.2d 868, 761 N.E.2d 560 (2001) (emphasis added).

59.     Under New York law, a dismissal pursuant to New York Criminal Procedure Law § 30.30 — New York's speedy trial statute — constitutes a favorable termination. *Smith-Hunter v. Harvey,* 95 N.Y.2d 191, 195-96, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000).

60.     The Second Circuit stated that an "accused should not be required to relinquish [the right to a speedy trial] in order to vindicate his right to be free from malicious prosecution." *Murphy v. Lynn,* 118 F.3d 938, 949 (2d Cir. 1997). The Second Circuit provided that a failure to treat a speedy trial dismissal as a favorable termination "would encourage state officials, hoping to shield wrongdoing officers . . . from liability, to commence criminal prosecutions against the victims of that wrongdoing and simply hold the criminal charges in abeyance until a court is forced to dismiss the case after six or more months." *Id.* at 951.

61.     New York law has generally treated dismissals for violation of speedy trial requirements as favorable terminations, beginning with the decision in *Reit v. Meyer,* 160 A.D. 752, 146 N.Y.S. 75, 78-79 (1st Dep't 1914) (favorable termination where accused obtained dismissal of criminal charges because district attorney unprepared to proceed). In *Loeb v. Teitelbaum,* 77 A.D.2d 92, 432 N.Y.S.2d 487 (2d Dep't 1980), the Appellate Division, Second Department adopted the reasoning of *Reit.* New York state cases accept as well-established the principle that

a speedy trial dismissal is a favorable termination. *See, e.g., Vitellaro v. Eagle Insurance Co.,* 150 A.D.2d 770, 771, 541 N.Y.S.2d 614, 615 (2d Dep't 1989) (speedy trial dismissal "has been held to constitute a favorable termination because it implies a lack of reasonable ground for the prosecution"); *Brown v. Town of Henrietta,* 118 Misc.2d 133, 135-36, 459 N.Y.S.2d 996, 998-99 (Sup.Ct. Monroe Co. 1983) (dismissal in furtherance of justice was in reality a speedy trial dismissal and therefore a favorable termination).

62.     In this case, based on the facts presented by the Plaintiff, there was no probable cause to arrest and detain the Plaintiff.  Likewise, there was no probable cause to prosecute the Plaintiff.

63.     Further, it is also equally clear that Officer Rodney did not witness the Plaintiff gambling. Defendants Exhibit D Rodney Deposition 45:2-8 Officer Rodney was not with Captain Yakatally when he observed the Plaintiff loitering with an intent to gamble. Defendants Exhibit D Rodney Deposition 51:6-12 Further, Captain Yakatally did not witness anyone gambling. Rather, he testified that he saw some individuals through a window and suspected gambling.  When police officers arrived at the lobby, no one was gambling.  Despite this fact, the criminal court complaint states that Officer Rodney observed the Plaintiff gambling in the lobby to support the unlawful arrest. Defendants Exhibit D Rodney Deposition 52:11 to 53:7

64.     The criminal court complaint provides "I observed the defendants in a crowd throwing dice on the floor of the lobby, a public place" and provides "the defendants were not able to tell me the identity of a building resident of whom the defendants were an invited guest."  Sim Declaration Exhibit C.  Clearly, these are false information.  Officer Rodney admitted that the information contained in the criminal court complaint is incorrect and thus, must be deemed to be falsified. Defendants Exhibit D Rodney Deposition 55:8-25 Officer Rodney testified that the criminal court complaint was wrong because she did not observe anyone throwing dice.

Defendants Exhibit D Rodney Deposition 58:5-15 Further, Officer Rudney does not recall if she told the ADA that she observed the gambling. Defendants Exhibit D Rudney Deposition 91:18-24 The fact is that she saw no one gambling.  Based on this falsified information, the prosecution continued until the Plaintiff obtained favorable termination of his February 10 arrest and the District Attorney sought dismissal of the February 23 arrest.

65.     It is submitted that the Plaintiff would have prevailed on the merits in this case if it proceeded to trial.  Notwithstanding these issues, it is submitted that the underlying criminal proceeding was dismissed on speedy trial grounds and thus, it is a favorable termination.

66.     Further, it is without question that the prosecution based on the February 23 incident was a favor termination in favor of the Plaintiff.  As such, Defendants' motion to dismiss the malicious prosecution claim must be denied.

## C.     PLAINTIFF HAS A VALID FAILURE TO INTERVENE CLAIMS SINCE THERE WAS A LACK OF PROBABLE CAUSE TO ARREST PLAINTIFF

67.     Plaintiffs' failure to intervene claim is grounded in the widely recognized rule that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). Moreover, the failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim. *See Coleman v. City of New York,* No. 07 Civ. 1051, 2010 WL 571986, at *5 (S.D.N.Y. Feb. 2, 2010) (dismissing failure to intervene claims against police officers where no underlying constitutional violation was alleged).

68.     In this case, there are questions of fact as to whether Defendants, through direct participation or failure to intervene while Allen Bell's constitutional rights were being violated. The Defendants, Officers Rodney and Marte knew that they did not have probable cause to

arrest, detain and prosecute Allen Bell especially in light of Plaintiff's testimony that he told

them that he was waiting for a friend to come downstairs.  With this said, Officers Rodney and

Marte knew that Plaintiff's rights were being violated and yet, failed to intervene to ensure that

his rights were not being violated.  Further, all officers knew they did not witness the Plaintiff

gambling, yet they falsely accused him of gambling by falsifying the criminal court complaint by

asserting that Officer Rodney witnessed gambling in the lobby of the building.  The Defendants

permitted Allen Bell's rights to be violated and failed to intervene.  Thus, there are questions of

fact present with respect to this claim.

## D.   MALICIOUS ABUSE OF PROCESS CLAIMS SHOULD NOT BE DISMISSED

69.     In the criminal context, malicious abuse of process is "by definition a denial of

procedural due process." *Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir. 1977).  The torts of

malicious prosecution and abuse of process are closely allied. While malicious prosecution

concerns the improper issuance of process, "[t]he gist of abuse of process is the improper use of

process after it is regularly issued." 2 Committee on Pattern Jury Instructions, Association of

Supreme Court Justices, New York Pattern Jury Instructions § 3:51 at 816 (1968). Since Second

Circuit has already recognized malicious prosecution claims under section 1983, *see White v.*

*Frank,* 855 F.2d 956, 961 n. 5 (2nd Cir. 1988), the Court also extended that recognition to the

abuse of criminal process.

70.     In New York, a malicious abuse of process claim lies against a defendant who (1)

employs regularly issued legal process to compel performance or forbearance of some act (2)

with intent to do harm without excuse or justification, and (3) in order to obtain a collateral

objective that is outside the legitimate ends of the process. *See Curiano v. Suozzi,* 63 N.Y.2d 113,

116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984); *Board of Educ. of Farmingdale v.*

*Farmingdale Classroom Teachers Ass'n,* 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 642, 343 N.E.2d 278, 282 (1975).

71.    Here, the officers clearly employed criminal process against Allen Bell by having him arraigned on charges of trespass and loitering with intent to gamble. *See Mormon v. Baran,* 35 N.Y.S.2d 906, 909 (Sup.Ct. 1942) (legal process means that a court issued the process, and the plaintiff will be penalized if he violates it).  The Defendants arrested Plaintiff on February 10, after calling in his name for information regarding his past history.  Further, they arrested Plaintiff on February 23 because they remembered the Plaintiff.  *See Board of Educ. of Farmingdale,* 38 N.Y.2d at 404, 380 N.Y.S.2d at 642-43, 343 N.E.2d at 283 ("collateral objective" includes retribution). As such, since there are issues of fact that the officers decided to arrest Marshall only after learning of his prior criminal history, there is an issue of fact to preclude summary judgment on the claim of malicious abuse of process.

## D.    NEGLIGENT HIRING AND MONELL CLAIMS SHOULD NOT BE DISMISSED

72.    Plaintiffs allege that the City is liable for constitutional violations under Section 1983. To impose liability under Section 1983 on a municipality for the acts of its employees, a plaintiff must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth.,* 615 F.3d 129, 140 (2d Cir.2010) (internal quotation marks omitted); *see Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[A] plaintiff may establish this required causal link by showing that a defendant was deliberately indifferent to the training, supervision, or discipline of its employees." Id. (citing Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 127–30 (2d Cir.2004)).

73.     The duty owed to plaintiff stems from New York's long recognized tort of negligent

hiring and retention.  *Haddock v City of New York*, 75 NY2d 478, 553 NE2d 987, 554 NYS2d

439 (1990); *Ford v Gildin*, 200 AD2d 224, 613 NYS2d 139 (1st Dept 1994); *Detone v Bullit

Courier Serv.*, 140 AD2d 278, 528 NYS2d 575 (1st Dept 1988).

74.     A municipality may only be held liable under § 1983 if it has caused the constitutional

violation at issue through a municipal policy or custom. *City of Canton v. Harris,* 489 U.S. 378,

385, 109 S.Ct. 1197, 1202-03, 103 L.Ed.2d 412 (1989). The doctrines of respondeat superior and

vicarious liability cannot be used to impose liability on a municipality for the acts of its lower-

level employees. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694

(1978). As such, under this claim, to establish a prima facie entitlement to summary judgment as

a matter of law, the Defendants were required to demonstrate that nothing in the past disciplinary

history of individual officers demonstrated that the City became aware or should have become

aware of a problem with the officers, which indicated that he was unfit.  In this respect, as the

movant, the City was required to establish that nothing in the history would have alerted the City

for a need to investigate, discharge or reassign the Defendant Officers. Rather, the City attempts

to meet its burden by making speculative and conclusory assertions, which should be deemed

fatal to the City seeking summary judgment relief on this negligent hiring and retention claim.

As such, the City's motion for summary judgment should be denied in its entirety.

**E.     INDIVIDUAL OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

75.     "Qualified immunity shields government officials from liability for civil damages as a

result of their performance of discretionary functions, and serves to protect government officials

from the burdens of costly, but insubstantial, lawsuits." *Hartline v. Gallo,* 546 F.3d 95, 102 (2d

Cir.2008) (internal quotation marks omitted). As qualified immunity is an affirmative defense,

the defendants bear the burden of proof. *Lore v. City of Syracuse,* 670 F.3d 127, 149 (2d Cir.2012).

76.     Qualified immunity does not shield a government employee from liability where "the acts were made in bad faith or the action was taken without a reasonable basis." *Kirchner v County of Niagara,* 107 AD3d 1620, 1624 (4th Dept 2013); *Arteaga v State*, 72 NY2d 212, 216 (1988).

77.     It is well settled that the right to be free from arrest without probable cause, and free from the use of excessive force, are clearly established constitutional rights. *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir. 2007); *Mills v. Fenger*, 216 Fed.Appx. 7, 8-9 (2d Cir. 2006). Furthermore, it was clearly established, at the time of plaintiffs' arrests that a visual cavity inspection conducted without a warrant and without reasonable suspicion to believe that the arrestee had secreted contraband inside a body cavity violates the Fourth Amendment. *People v. Hall*, 10 N.Y.3d 303, 311 (2008); *People v. Duffy*, 66 A.D.3d 588 (1st Dept. 2009); *People v. Gonzalez,* 57 A.D.3d 1220, 1221 (3d Dept. 2008); *People v. Clayton*, 57 A.D.3d 557, 558 (2d Dept. 2008).

78.     Also, "arguable" probable cause does not mean "almost" probable cause. *See Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). In the context of a false arrest claim, "the essential inquiry in determining whether qualified immunity is available to an officer . . . is whether it was objectively reasonable for the officer to conclude that probable cause existed." *Id.* Therefore, "if officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Id.* Moreover, "if the officer's reasonableness depends on material issues of fact, then summary judgment is inappropriate." *Id.* at 88.

79.     In the case, Officer Rodney testified that if a person was standing in a NYCHA building lobby, she would need more information to stop that individual. Defendants Exhibit D Rodney Deposition 34:18-25 Further, Officer Rodney provided that if the person refuses to answer her questions, she could direct that person to leave the lobby. Defendants Exhibit D Rodney Deposition 35:9-16 Officer Rodney also provided that if a person was just standing in the lobby, refuses to answer any questions and refuses to leave the lobby, there is nothing she can do if they are not committing any sort of illegal activity. Defendants Exhibit D Rodney Deposition 40:2-8

80.     In this case, Mr. Bell was standing in the lobby waiting for his friend.  According to the Plaintiff, the Defendants arrested him without asking him to telephone his friend or to leave the lobby.  Rather, the Plaintiff testified that the Defendants just arrested him after asking for his identification.   It is clear that Mr. Bell was not engaged in any illegal activity on February 10. Again, Mr. Bell was just standing in the lobby waiting for his friend.  When asked what Mr. Bell was doing, he answered that he does not reside in the building but that he was waiting for a friend to come downstairs.

81.     Further, with respect to the February 23 arrest, it is certain that Officer Rodney signed the criminal court complaint knowing that it contained false information, namely that Officer Rodney never witnessed anyone gambling.

82.     To prove entitlement to summary judgment based on the doctrine of qualified immunity a defendant must establish, as a matter of law, that it was objectively reasonable for him or her to believe that his or her conduct was appropriate under the circumstances, or that officers of reasonable competence could disagree as to whether his or her conduct was proper. *Guntlow v. Barbera*, 76 A.D.3d 760, 766 (3d Dept. 2010).  If there is a triable issue of fact as to whether the police had probable cause to arrest the plaintiff(s), a motion for summary judgment based on the

defense of qualified immunity must be denied.  *See MacDonald v. Town of Greenburgh,* 112 AD3d 586 (2d Dept 2013).

83.     Here, the conduct of the Defendant police officer in this case deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.  Furthermore, the egregious conduct of the police constituted a gross deviation from accepted police practice and procedure, and demonstrates an intentional, or at least reckless, disregard for proper procedure, as well as the constitutional rights of plaintiffs.  Indeed, viewed in the light most favorable to plaintiffs, the evidence shows that the police fabricated evidence, and conveyed false and misleading information to the District Attorney's Office in order to induce the prosecution of plaintiff. This was demonstrated by the testimony of Officer Rodney who testified that the criminal court complaint contained false and incorrect information, namely that she witnessed Plaintiff gambling by throwing dice in the lobby of the building. Accordingly, Defendants are not entitled to qualified immunity.

84.     "The qualified immunity analysis is inextricably linked to the scope of the officers' pre-arrest investigation."  *Sankar v City of New York,* 867 F.Supp.2d 297, 307-08 (EDNY 2012). Whether the officers took certain investigatory steps before arresting the Plaintiffs are material issues of fact, "are strictly the province of the jury to resolve."  *Manganiello v City of New York*, 612 F.3d 149, 165 (2d Cir 2010).  Therefore, Defendants are not entitled to qualified immunity as a matter of law.

85.     Thus, there are questions of fact that should preclude the grant of summary judgment on the issue of qualified immunity.

86.     For the reasons stated above, summary judgment should be denied in its entirety.

**F.      STATE AND FEDERAL ASSAULT AND BATTERY CLAIMS SHOULD NOT BE DISMISSED**

87.      It is well settled that any contact or touching of a plaintiff by a police officer during an unlawful arrest constitutes the completed torts of assault and battery.      *Wyllie v. Dist. Atty. of County of Kings,* 2 A.D.3d 714, 718 (2d Dept. 2003); *Gantt v. County of Nassau*, 234 A.D.2d 338, 339 (2d Dept. 1996).  No showing of injury is required.  *Zgraggen v. Wilsey*, 200 A.D.2d 818, 819 (3d Dept. 1994).  Indeed, to recover for battery, a plaintiff need prove only that there was "bodily contact, that the contact was offensive, i.e., wrongful under all of the circumstances, and intent to make the contact without the plaintiff's consent."  *Holland v. City of Poughkeepsie,* 90 A.D.3d 841, 846 (2d Dept. 2011) (*quoting Higgins v. Hamilton*, 18 A.D.3d 436, 436 [2nd Dept. 2005]).

88.      When an individual's arrest is unlawful, the police officer's mere act of placing handcuffs on the individual constitutes the completed torts of assault and battery.  *Johnson v. Suffolk County Police Dept.,* 245 A.D.2d 340, 341 (2d Dept. 1997) ("as the arrest of the plaintiff by the defendant police officer . . . was unlawful, [the police officer] committed a battery when he touched the plaintiff during that arrest"); *Budgar v. State,* 98 Misc.2d 588, 592 (Ct. Cl. 1979) ("since the arrest was unlawful, a technical assault and battery occurred when the claimant was handcuffed and forcibly placed in the State police car"); *Rubio v. County of Suffolk,* 01-CV-1806 (TCP), 2007 WL 2993830 (E.D.N.Y. Oct. 9, 2007) ("under New York law, an unlawful arrest generally will constitute assault and battery"); *Sulkowska v. City of New York,* 129 F.Supp 2d 274, 294 (S.D.N.Y. 2001) ("if an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest").

89.      In this case, it is asserted that Mr. Bell's arrests on February 10 and 23 were unlawful. As such, any touching, including putting handcuffs on Mr. Bell completed the torts of assault and

battery.  Thus, the Defendants assertion that Mr. Bell was not physically injured is misplaced since it is argued that the Defendants lacked probable cause to arrest Mr. Bell and thus, committed assault and battery when they placed handcuffs on Mr. Bell.

90.     At the very least, these are triable issues of fact that must be decided by the trier of facts. Therefore, Defendants' motion for summary judgment should be denied in its entirety.

Dated:          Bayside, New York
                May 24, 2021


                                        */s/Sang J. Sim*
                                        Sang J. Sim, Esq.
                                        Sim & DePaola, LLP.
                                        42-40 Bell Blvd. Suite 201
                                        Bayside, New York 11361
                                        Tel: (718) 281-0400
                                        Email: psim@simdepaola.com
                                        *Attorneys for Plaintiff*